IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

DE'ANDRE BERNARD,

                        Plaintiff,                            OPINION AND ORDER

     v.

                                                      17-cv-331-wmc

GERRAD KIBBLE, et al.,

                        Defendants.

Plaintiff De'Andre Bernard is proceeding under 42 U.S.C § 1983 against certain employees at the Waupun Correctional Institution on Eighth Amendment claims for deliberate indifference to a substantial risk of self-harm, to a serious medical need, and to conditions of his confinement. (Dkt. #18.) He is also proceeding against defendant Warden Foster in his official capacity on a claim for injunctive relief. (Dkt. #64.) Defendants have filed a motion for partial summary judgment on the ground that Bernard failed to exhaust his administrative remedies with respect to his individual capacity claims against defendants Barrett, Moon, Muenchow, Ashworth, Meli, Foster, Roper, Beahm, and Schneider. (Dkt. #112.) For the following reasons, the motion will be granted in part and denied in part.[1]

---

[1] Also before the court is Bernard's *pro se* motion for sanctions against defendants, alleging that: (1) they failed to preserve certain security camera footage, intercom transmissions, and a nursing protocol document relevant to an incident of self-harm on October 29, 2016; and (2) defendant Correctional Officer Bleleir failed to log by hand seven intercom communications with Bernard on August 13, 2018. (Dkt. #94.) If a party "intentionally destroys evidence in bad faith, the judge may instruct the jury to infer the evidence contained incriminatory content." *Bracey v. Grondin*, 712 F.3d 1012, 1018 (7th Cir. 2013). At this stage, it is not yet apparent which, if any, claims may have merit, since none of the missing information appears to have any bearing on plaintiff's duty to exhaust. Accordingly, the court will deny the motion without prejudice subject to renewal at summary judgment, when the substantive importance of the missing information (and any reasonable or legally compelled inference as a sanction) can be better understood in context.

OPINION

Prisoners may not bring a federal claim about events in prison "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). In other words, a prisoner must follow all the prison's rules for completing the grievance process. *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). This includes: (1) compliance with instructions for filing an initial grievance, *Cannon v. Washington*, 418 F.3d 714, 718 (7th Cir. 2005); and (2) pursing all available appeals "in the place, and at the time, the prison administrative rules require," *Pozo*, 286 F.3d at 1025; *see also Burrell v. Powers*, 431 F.3d 282, 284-85 (7th Cir. 2005). "Exhaustion is necessary even if . . . the prisoner believes that exhaustion is futile." *Dole v. Chandler*, 438 F.3d 804, 808-09 (7th Cir. 2006); *see also Thornton v. Snyder*, 428 F.3d 690, 694 (7th Cir. 2005) ("An inmate's perception that exhaustion would be futile does not excuse him from the exhaustion requirement.") (citations omitted).

This exhaustion requirement affords prison administrators a fair opportunity to resolve a grievance without litigation. *Woodford v. Ngo*, 548 U.S. 81, 88-89 (2006). However, a prisoner's failure to exhaust constitutes an affirmative defense, which defendant must prove. *Davis v. Mason*, 881 F.3d 982, 985 (7th Cir. 2018). At summary judgment, defendants must specifically show that (1) there is no genuine dispute of material fact as to plaintiff's failure to exhaust, and (2) they are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Wisconsin prisoners start the administrative process by filing an inmate complaint with the institution complaint examiner ("ICE") within 14 days after the occurrence giving

rise to the complaint.  Wis. Admin. Code § DOC 310.09(6).[2]  Further, the inmate complaint must "clearly identify the issue" that the inmate seeks to raise.  *Id.* § 310.09(1)(e).  Once filed, ICE is required to assign a file number to the inmate complaint, along with a classification code and date.  *Id.* § 310.11(2).  ICE is also required to "review and acknowledge each complaint in writing within 5 working days after the date of receipt by the ICE."  *Id.*

If ICE rejects a grievance for procedural reasons without addressing the merits, an inmate can appeal that rejection.  *Id.* § 310.11(6).  If the complaint is not rejected on procedural grounds, then ICE must make a recommendation to the reviewing authority as to how the complaint should be resolved.  *Id.* § 310.11(4).  The offender complaint is then decided by the appropriate reviewing authority, whose decision could be appealed by the inmate to a correctional complaint examiner ("CCE") within "10 calendar days."  *Id.* §§ 310.12, 310.13.  If appealed timely, then the CCE must make a recommendation to the Secretary of the Department of Corrections, whose decision is final.  *Id.* §§ 310.13, 310.14.

At issue here is whether plaintiff failed to exhaust his administrative remedies with respect to his claims against defendants Barrett, Roper, Beahm, Muenchow, Moon, Schneider, Ashworth, Melli, and Foster.  As an initial matter, plaintiff concedes that he did not properly exhaust his inmate complaint filed against defendant Barrett (WCI-2017-17384).  (Dkt. #126 at 6 n.2.)  Accordingly, plaintiff's claim against this defendant will

---

[2] On April 1, 2018, a new version of Wis. Admin. Code § DOC ch. 310 went into effect.  Unless indicated otherwise, this order refers to the December 2014 version in effect when the oldest of the at-issue claims arose.

be dismissed without prejudice.[3]  *See Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir.2004) (holding that "all dismissals under § 1997e(a) should be without prejudice").  The court will address the remaining inmate grievances by defendant or groups of defendants, as appropriate.

## I.  Defendant Schneider

Plaintiff alleges that on August 13, 2018, he contacted the restrictive housing unit ("RHU") bubble officer Joshua Bleleir through the intercom about his anxiety and thoughts of self-harm.  In response, Bleleir allegedly taunted plaintiff, who began cutting himself. Later that afternoon, when defendant Correctional Officer Schneider came to plaintiff's cell door to pass out supplies, Schneider allegedly failed to seek medical attention despite plaintiff showing him his bleeding wounds and a sharpened pen tip.[4]

Plaintiff is proceeding against Schneider and Bleleir on claims of deliberate indifference.  However, inmate complaint WCI-2018-18261 concerning this incident of self-harm relates solely to plaintiff's claim against Bleleir:

> 1.) I DeAndre Bernard, mentally ill inmate, with an extensive and frequent history of self-harm, contacted R.H.U. bubble officer (male) and alerted him to my mental health emergency (per P.S.R. policy) and that I was [having] thoughts of self-harm, 2.) the officer was dismissive, antagonizing and even taunted me by urging me to "cut deeper," and "I wasn't doing it right cuz I wasn't dead." 3.) This carried on for an entire

---

[3] The court, however, understands that this dismissal will function as one with prejudice, since it would be too late for plaintiff to exhaust his claim against Barrett now.  *See Walker v. Thompson*, 288 F.3d 1005, 1009 (7th Cir. 2002) ("Dismissal for failure to exhaust is without prejudice and so does not bar reinstatement of the suit unless it is too late to exhaust.") (citations omitted).

[4] In the original complaint, plaintiff identified this correctional officer as Nelson, but later amended his complaint to substitute defendant Schneider.  (Dkt. #64.)

4

> hour, me self-harming myself and this officer refusing to act.
> As a result of this indifference I suffered 3 painful lacerations
> which required 22 stitches.

(Dkt. #113-7 at 10.)  ICE and CCE both recommended dismissal, but ICE also referred the matter for further investigation in light of "the nature of the allegations" and the absence of "logged emergency call button transmissions for the date and approximate time cited." (Dkt. #113-7 at 2.)  Because supervisory staff then assumed review of the incident, there was no need for a parallel investigation via the inmate grievance system, and plaintiff's appeal was dismissed.  (Dkt. #113-7 at 5.)

Plaintiff does not reference any other conduct by Bleleir or any other staff on August 13, 2018, in his grievance or on appeal.  (Dkt. #113-7 at 10-11.)  Certainly, DOC regulations do not require inmates to know the names of the employees they are complaining about; still, an inmate must "clearly identify the issue." *Schillinger v. Kiley*, 954 F.3d 990, 995 (7th Cir. 2020); *see also* Wis. Admin. Code § DOC 310.07(5) (2018) (limiting a complaint to "only one clearly identified issue").  Moreover, an inmate must provide enough information to at least identify a defendant to the grievance officer as "the target" of any investigation.  *See Roberts v. Neal*, 745 F.3d 232, 235 (7th Cir. 2014) ("fatal defect" of grievance was "the absence of anything in it to indicate that [the defendant] was the target").

Here, plaintiff's complaint about August 13 focuses solely on Bleleir's conduct, and thus provides no notice to ICE or the institution that plaintiff was challenging Schneider's conduct as well.  Thus, there is no dispute that plaintiff has exhausted his administrative remedies with respect to his claim against Bleleir, but his claims against Schneider will be

dismissed without prejudice.[5]

## II. Defendants Moon and Muenchow

As for the individual ICE examiners, Moon and Muenchow, plaintiff claims each was repeatedly, deliberately indifferent to a risk of self-harm and to his serious medical needs by rejecting his inmate grievances. (Dkt. #18 at 14.) Specifically, on December 27, 2018, plaintiff filed grievance WCI-2018-26422 generally complaining that these two defendants were rejecting his grievances as *either* concerning more than one issue *or* failing to include sufficient detail. (Dkt. #113-5 at 6.) Another ICE found no administrative code violations and recommended dismissal, and Warden Foster agreed as the reviewing authority. Plaintiff concedes that he did not appeal that decision, and therefore did not exhaust his remedies with respect to this grievance. (Dkt. #126 at 6.) He now argues that "the systemic disregard of his due process rights" could not "be fixed by complaining of the systemic disregard of his due process rights." (*Id.*) However, as noted above, an inmate's perception of futility does not excuse him from the exhaustion requirement. *Thornton*, 428 F.3d at 694. Accordingly, these claims against Moon and Muenchow will be dismissed without prejudice as well.

## III. Defendants Moon, Muenchow, Ashworth, Meli, and Warden Foster

Plaintiff, who suffers from mental health conditions sufficiently serious to be

---

[5] Defendants note that plaintiff filed a separate incident involving complaint against Schneider in WCI-2018-16630, claiming that he ignored plaintiff's self-harm threats on July 11, 2018. (Dkt. #113-6 at 6.) However, plaintiff is not pursuing any claim based on that event in this lawsuit, and he does not address this complaint in his response brief. Accordingly, the court will not address this complaint further.

classified as an MH-2a inmate, was placed in restrictive housing on October 19, 2018. DAI policy #303.00.02 mandates that each institution "develop a RH Step Program that provides inmates with opportunities and incentives to improve their attitudes and behavior" that include additional out-of-cell time for programming and activities for MH-2A inmates like plaintiff.  (Dkt. #128-1 at 3.)  Plaintiff claims that defendants Moon and Muenchow, as well as Warden Foster, Segregation Program Supervisor Ashworth, and Security Director Meli, were each aware that Waupun was in violation of this DAI policy and that plaintiff's resulting conditions of confinement placed him at an ongoing, serious risk of self-harm, yet did nothing.  (Dkt. #18 at 13.)

With respect to this issue, plaintiff filed inmate grievance WCI-2018-25648 on December 8, 2018.  In it, plaintiff indicates that "conditions of confinement for MH-2A inmates [are] not being met in accordance with DAI [policy] 303.00.02."  (Dkt. #113-8 at 8.)  Specifically, plaintiff notes that section 2(c) of DAI policy 303.00.02 requires staff to provide "seriously mentally ill" inmates "additional out of cell time for programming and activities" and "out of cell groups, counseling and programing and activities."  (*Id.*)  Plaintiff also cites section 8(c) of the same DAI policy for the proposition that an inmate with his mental health classification "shall have a [behavior modification plan] developed within 10 days" of receiving a disciplinary separation disposition of 60 days or more. Plaintiff further claims that these requirements are not being met, as he has not received any additional programming or counseling; and as a result, he has "had numerous mental breakdowns and episodes that landed [him] in obs[ervation] for self-harm."  (Dkt. #113-

8 at 8.)  Plaintiff notes that he spoke to defendants Foster, Melli and Ashford about the issue, among other staff.

Even so, Muenchow returned plaintiff's complaints as to violation of these DAI policies, asking that he clarify what his specific requests were of staff, and when and who denied his request, as well as provide supporting documentation.   Plaintiff then resubmitted his complaint, clarifying on the return letter that he wanted a behavior modification plan and reiterating that despite his claim he had yet to receive access to *any* additional programming and activities, not just that a specific request had been denied. (Dkt. #113-8 at 9.)  Upon resubmission, however, Muenchow again rejected the complaint under § 310.10(6)(d), which requires inmates to provide sufficient information to support a complaint.  Specifically, Muenchow faulted plaintiff for not specifying what he needed or what plaintiff "believes he should specifically have" in terms of therapeutic activities or treatment.  (Dkt. #113-8 at 6.)  Finally, Muenchow indicated that behavior modification plans are not "automatically developed."  (*Id.*)

Plaintiff appealed, underscoring that:  (1) he had cited to specific sections of the policy; (2) Muenchow had misinterpreted the policy requiring the development of behavior modification plans within a certain timeframe for MH-2a inmates; and (3) plaintiff's "evidence" was "the fact that [he had] not received any" of the accommodations mandated in the policy as a severely mentally ill inmate in restrictive housing.  (Dkt. #113-8 at 13.) Foster upheld the rejection.

Here, the parties fundamentally dispute ICE Muenchow's interpretation and application of § 310.10(6)(d).  As a general matter, an inmate complaint that is "rejected"

based on a procedural defect does not fulfill the exhaustion requirement. *Conyers v. Abitz*, 416 F.3d 580, 584 (7th Cir. 2005). A prisoner's compliance with procedural rules is important in making sure prison officials have "a fair opportunity to correct their own errors." *Woodford*, 548 U.S. at 94. However, where "the applicable regulations provide little guidance regarding the required contents of a prison administrative complaint," the complaint "will suffice for exhaustion purposes if it provides notice to the prison of the nature of the wrong for which redress is sought." *Schillinger v. Kiley*, 954 F.3d 990, 995 (7th Cir. 2020) (citation omitted). In this case, plaintiff's complaint, including his return letter, would appear on its face to provide sufficient information about the nature of his conditions of confinement claim and straightforward violations of mandatory DAI policy to have given prison officials "a fair opportunity to correct their own errors." Specifically, plaintiff's grievance: explains that he is a MH-2a inmate; specifies the two sections of DAI policy 303.00.02 that he claims defendants are violating; further clarifies that he requested a behavior modification plan; *and* maintains that he has not received access to any out-of-cell groups, counseling, or programming, let alone additional out-of-cell time for therapeutic activities as an MH-2a inmate. Finally, and most importantly, plaintiff states that his mental health is deteriorating to the point that he has been placed on observation status and had several breakdowns.

While his complaint does not concern the denial of a specific activity or treatment by one individual defendant, plaintiff apparently had yet to be given a plan with specific recommendations, or had one implemented, and the thrust of his complaint was that he had *no* therapeutic outlet in restrictive housing. Thus, the subject of his complaint is the

9

same as the claim on which plaintiff is proceeding in this case.  Accordingly, the court will deny defendants' motion with respect to plaintiff's conditions of confinement claim.

## IV.  Defendants Roper and Beahm

Finally, plaintiff is proceeding against defendants Roper and Beahm, both correctional officers, on claims that they were deliberately indifferent to a risk of self-harm and to serious medical needs in June of 2017.  Defendants argue that these claims are unexhausted because plaintiff failed to follow ICE's directive to first attempt to resolve his grievances informally with Captain Tritt, a nondefendant, before resubmitting them, so the institution never reached the merits.  Moreover, under § 310.09(4), which was in effect at the time, before "accepting [an inmate's] complaint, the ICE may direct the inmate to attempt to resolve the issue."  Plaintiff does not challenge that procedure, so the court will not second-guess it here.  As a general matter, plaintiff is required to follow the prison's established grievance procedures before filing suit, *Chandler*, 438 F.3d at 809, and in response to defendants' motion, plaintiff has submitted an affidavit attesting that he did follow ICE's directives.  Although the question is close with respect to defendant Beahm, the court will dismiss without prejudice plaintiff's claims against these two defendants for the reasons set forth below.

### 1.  Defendant Roper

Beginning with Roper, plaintiff alleges that on June 18, 2017, he refused to give him prescribed medication because plaintiff was not at his cell door on time.  However, Roper still gave plaintiff his Ramadan meal bag, which contained two spoons.  At that

point, plaintiff allegedly alerted Roper the spoons violated his "no sharps" restriction and he would harm himself with them.  Nevertheless, Roper allegedly allowed plaintiff to keep the spoons, which he then used to self-harm the next day.

On June 20, however, plaintiff submitted WCI-2017-16093 about the incident, indicating that he had spoken with Roper and Captain Tritt.  (Dkt. #113-3 at 12.)  ICE also sent plaintiff a return letter the next day on June 21, which expressly declined to accept the complaint and directed him to send the return letter to the Captain for his response. (*Id.* at 13.)  The letter provided that the Captain had "at least 5 working days" to reply by documenting his response on the letter.  (*Id.*)  If plaintiff still felt that his issue with Roper was not resolved at that point, then he could resubmit his complaint with the captain's response to the return letter.  (*Id.* at 12.)

ICE received plaintiff's resubmitted complaint and the return letter, which was blank, on June 23, 2017.  (*Id.* at 11-12.)  In his resubmission documents, however, plaintiff does not claim to have sent the letter to the Captain.  In recommending dismissal, ICE concluded that plaintiff was not willing to assist in resolving his concerns.  Specifically, ICE noted that plaintiff had never sent the return letter to Captain Tritt as directed and had simply resubmitted the complaint.  Moreover, Captain Tritt stated that plaintiff had never spoken to him about Roper.  Plaintiff next appealed to CCE, reiterating his allegations against Roper *again* without referencing Captain Tritt.  The office of the Secretary dismissed the appeal on August 7, 2017.

Plaintiff now attests that he *did* speak to Captain Tritt before resubmitting his grievance, and he did send the Captain a copy of the return letter.  (Dkt. #127 at 1-2.)

But the directive was to seek a response from Captain Tritt himself *before re*submitting the grievance via the return letter, which the Captain had at least five days to consider. Even accepting plaintiff's assertions before this court, he did not take the opportunity to provide ICE or CCE or the Secretary with any details or documentation of his attempts at informal resolution over the Captain's denial, plaintiff's claim that he did comply with the directive.

Plaintiff then almost immediately resubmitted his complaint and blank return letter, without any new, follow-up information for ICE or in his appeal. "[U]nless the prisoner completes the administrative process by following the rules the state has established for that process, exhaustion has not occurred." *Pozo,* 286 F.3d at 1023. Because plaintiff did not "offer any proof that he at least attempted to satisfy the DOC's exhaustion requirement in the way that the ICE required," therefore, he cannot proceed past summary judgment on his exhaustion defense against defendant Roper. *Carlton v. Dodge Corr. Inst.*, No. 12-cv-695-wmc, 2014 WL 418796, at *5 (W.D. Wis. Aug. 21, 2014).

### 2. Defendant Beahm

As for defendant Beahm, the question is much closer. Plaintiff alleges that this officer was involved in an incident on June 19, 2017. That day, plaintiff woke up, began hallucinating that there were ants in his cell, and panicked. After he pressed the intercom button, Beahm came to his cell door. Plaintiff told Beahm about his anxiety attack and intention to self-harm, and showed Beahm a broken, sharpened spoon. Nevertheless, Beahm allegedly walked away, allowing plaintiff to harm himself.

Plaintiff filed WCI-2017-17383 about this incident on June 22, 2017, but ICE declined to accept the grievance. Instead, like with his grievance against Roper, ICE sent

plaintiff a return letter, instructing him (1) to contact Captain Tritt, (2) to send the captain the letter for a response, and (3) to resubmit the complaint and letter if the issue was not resolved.  ICE repeated this directive after receiving plaintiff's resubmitted complaint on June 30, and finding unsubstantiated plaintiff's assertion on the resubmitted complaint that he had spoken with the captain on June 29, who had allegedly "said he'll do his best to get me out of here."  (Dkt. #113-4 at 11.)

On July 10, ICE received plaintiff's resubmitted grievance for a second time.  Plaintiff added that Captain Tritt had returned the letters to plaintiff blank on July 7, but did not suggest that plaintiff had made any renewed attempt to actually speak with the captain.  At that point, ICE recommended dismissal for plaintiff's failure to cooperate, again crediting Captain Tritt's representation that plaintiff had neither spoke to him nor sent him letters about the subject complaint against Beahm.  Plaintiff appealed, maintaining that he had done "exactly what [he] was directed to do and Tritt sent the return letters back and lied about doing so."  (Dkt. #113-4 at 16.)  However, the Office of the Secretary dismissed the appeal on August 7, 2017.

Before this court, plaintiff once more attests that he *did* speak to Captain Tritt before resubmitting the complaint, and that he did give the captain the return letters only to have them returned to him blank, as before.  (Dkt. #127 at 1.)  This time, plaintiff noted on his complaint with each resubmission what step he had taken, with dates.  Even so, the details remained thin, despite plaintiff having resubmitted the complaint for a second time with neither return letter including any response from Captain Tritt, who specifically denied plaintiff's version of events.  Moreover, when plaintiff appealed the

13

rejected complaint to the reviewing authority, he again provided no additional detail of his resolution attempts, suggesting only that the captain was being untruthful.

At that point, plaintiff twice resubmitted his complaint concerning Beahm, showing some effort to clear ICE's administrative hurdles, but plaintiff ultimately did not provide enough information to show ICE or the reviewing authority that he had properly followed directives. Accordingly, this court must, with some reluctance, grant defendants' motion with respect to plaintiff's claims against Beahm as well, while remaining sensitive to the numerous pitfalls that the Wisconsin DOC's grievance process presents, and notes that this result does not necessarily dictate the outcome in another case.

## ORDER

IT IS ORDERED that:

1) Plaintiff's motion for sanctions (dkt. #94) is DENIED without prejudice pending full briefing on the merits of plaintiff's claims at summary judgment.

2) Defendants' motion for summary judgment (dkt. #112) is GRANTED IN PART and DENIED IN PART as provided in this order.

3) Defendants Barrett, Schneider, Roper, and Beahm are DISMISSED from this lawsuit.

Entered this 14th day of June, 2022.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge

14